IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BR NORTH 223, LLC, | 1: 10-cv-02153 LJO-BAM |
| Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S APPLICATION |
| vs. | FOR DEFAULT JUDGMENT |
| BERNARD GLIEBERMAN, both individually and as trustee of BERNARD GLIEBERMAN REVOCABLE LIVING TRUST dated June 8, 2001 as amended, | |
| Defendant. | |

## I.   INTRODUCTION

On October 27, 2011, Plaintiff BR North 223, LLC ("Plaintiff") filed the present motion for default judgment against Defendant Bernard Glieberman, individually and as trustee of the Bernard Glieberman Revocable Living Trust (collectively referred to as "Glieberman"). Glieberman did not file an opposition. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for December 15, 2011. Having considered the moving papers, declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order:

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**A.     Plaintiff's Claims**

On November 16, 2010, Plaintiff filed a Verified Complaint for breach of a guaranty contract ("Plaintiff's Complaint") against Glieberman in this action. (Doc. 1.) Glieberman has not answered or otherwise made an appearance in this action.

Plaintiff's Complaint alleges, *inter alia,* loans were extended to a limited liability company named "Crosswinds at Bellevue Ranch North, LLC" ("Crosswinds"). (Pl.'s Compl., ¶ 4, Doc. 1.) Bernard Glieberman is alleged to own Crosswinds in whole or in part. (Pl.'s Compl., ¶ 4, Doc. 1.) Bernard Glieberman is also alleged to have guarantied the loans to Crosswinds - both in his individual capacity and as trustee of The Bernard Glieberman Revocable Living Trust. (Pl.'s Compl., ¶ 4, Doc. 1.) The loans were offered to finance a real estate development project located in Merced County, California. (Pl.'s Compl., ¶ 4, Doc. 1.) Crosswinds failed to complete the real estate development project and subsequently defaulted on the loan. (Pl.'s Compl., ¶ 4, Doc. 1.)

### 1.     The Original Loan and Guaranty

On November 7, 2006, Crosswinds entered into a loan agreement whereby Plaintiff agreed to makes advances to Crosswinds up to a maximum principal amount of $27,950,000.00 on terms set forth in the loan agreement (The "Original Loan"). (Pl.'s Compl., ¶ 4, Doc. 1; Declaration of Steven Darak ("Darak Decl."), Attach. 1, Doc. 43.) That same day, Bernard Glieberman, in his individual capacity and as trustee of The Bernard Glieberman Revocable Living Trust, executed an Unconditional Loan Guaranty of the obligations of Crosswinds under the Original Loan (the "Original Guaranty"). (Pl.'s Compl., ¶ 13, Doc. 1; Darak Decl., Attach. 5, Doc. 43.)

### 2.     The Amended Loan and Guaranty

On May 24, 2007, Crosswinds and Plaintiff executed an Amended and Restated Construction Loan Agreement (the "Amended Loan"). (Pl.'s Compl., ¶ 7, Doc. 1; Darak Decl., Attach. 6, Doc. 43.) The purpose of the Amended Loan was to increase the loan amount and allow Crosswinds to borrow up to a maximum principal of $53,450,000.00. (Pl.'s Compl., ¶¶ 7, 15, Doc. 1.) On May 30, 2007, Bernard Glieberman, in his individual capacity and as trustee of The Bernard Glieberman Revocable Living Trust, executed an Amended and Restated Unconditional Loan Guaranty of the

obligations of Crosswinds under the Amended Loan (the "Amended Guaranty"). (Pl.'s Compl., ¶ 14, Doc. 1; Darak Decl., Attach. 9, Doc. 43.) The Amended Guaranty states in pertinent part:

> In order to induce Creditor to modify the Loan and enter into and make that certain Loan in the amount of up to $53,450,000 to Debtor . . . Guarantor [Glieberman] unconditionally guarantees the due and punctual payment and performance of the debt and other related obligations by the debtor . . .

(Darak Decl., Attach. 9, ¶ 2, Doc. 43.)

### 3. The Default

The Amended Loan matured on November 22, 2008. (Pl.'s Compl., ¶ 17, Doc. 1; Darak Decl., ¶ 18, Doc. 43.) At this time, the outstanding principal balance on the Amended Loan was $39,291,542.28, and the outstanding amount of unpaid interest on the Amended Loan was $13,101,449.72. (Pl.'s Compl., ¶ 18, Doc. 1; Darak Decl., ¶¶ 23, 24, Attach. 11, 12, Doc. 43.) As Crosswinds had not tended full payment of outstanding principal and interest on the maturity date, the Amended Loan was deemed to be in default. (Pl.'s Compl., ¶ 17, Doc. 1; Darak Decl., ¶ 18, Doc. 43.) On March 25, 2010, Plaintiff made a demand for payment in full on Crosswinds and Glieberman under the Amended Guaranty. (Darak Decl., ¶ 20, Attach. 10, Doc. 43.) Crosswinds and Glieberman did not thereafter tender payment of the entire unpaid balance under the terms of the Amended Loan and Amended Guaranty. (Darak Decl., ¶ 21, Doc. 43.) The Amended Loan remains in default.

In the event of a default, the Amended Loan provided a default interest rate of 24% on the outstanding principal balance. (Darak Decl., ¶ 26, Attach. 13, Doc. 43.) As of the date Plaintiff's Motion was filed, the amount of unpaid interest at the default rate is $25,726,351.42. (Darak Decl., ¶ 26, Attach. 13, Doc. 43.)[1] Plaintiff additionally claims entitlement to late charges pursuant to the Amended Loan in the amount of $9,000,035.65 (Darak Decl., ¶¶ 30-31, Attach. 13, Doc. 43), and internal enforcement fees in the amount of $50,862.67. (Darak Dec., ¶ 32, Attach. 13, Doc. 43.)

---

[1] In Plaintiff's total damage request, the amount of default interest was reduced by Plaintiff's $2,700,000.00 credit bid at a non-judicial foreclosure sale of the subject property held on March 3, 2011. (Darak Dec., ¶¶ 28-29, Attach. 11, Doc. 43.)

In sum, as of October 21, 2011, Plaintiff claims a total amount due and owing to Plaintiff under the Amended Loan of $81,170,331.74.[2]  (Darak Decl., ¶ 32, Doc. 43.)

**B.    Summary of Plaintiff's Default Efforts**

On February 24, 2011, Plaintiff moved for a default judgment against Glieberman.  (Doc. 12.)  In findings and recommendations dated May 9, 2011, United States Magistrate Judge Dennis L. Beck recommended Plaintiff's motion for default judgment be denied.  (Doc. 22.)  Judge Beck's findings and recommendations were adapted in full by Chief United States District Judge Oliver W. Wanger.[3]

Judge Beck's recommendation to deny Plaintiff's motion for default judgment was based on insufficient service of process.  (Doc. 22, 3: 16-25.)   Judge Beck noted that Plaintiff had submitted a proof of service purporting to establish that Glieberman was served by substituted service at the office of Glieberman's legal counsel, Fredrick Elias.   (Doc. 22, 3: 16-19.)  Specifically, Plaintiff's process server stated that Glieberman's attorney (Mr. Elias) contacted him and indicated that his office would accept the service.  (Doc. 22, 2: 6-8.)  Judge Beck ruled that the process server's statement that "the subject's attorney called . . . and stated his office would accept the service" was insufficient to establish Mr. Elias was a designated or authorized agent to receive service of process pursuant to Fed. R. Civ. P. 4(e).  (Doc. 22, 3: 20-23.)

On June 9, 2011, Plaintiff sent a letter to Mr. Elias to request express written authorization to allow Mr. Elias, or an agent of his law firm, to accept service of process on Glieberman's behalf. (Declaration of Jeffrey E. Mitchell ("Mitchell Decl.") ¶ 6, Attach. 1, Doc. 44.)  The letter attached an Authorization of Substitution of Service of Process for Glieberman's signature that requested Glieberman's express authorization to permit Mr. Elias, or an agent of his law firm, to accept service on his behalf.   (Mitchell Decl., ¶ 7, Attach. 1, Doc. 44.)  On June 16, 2011, Mr. Elias returned an original executed Authorization of Substitution of Service of Process signed by Glieberman.

---

[2] The Court has not received notice that Glieberman has filed for any bankruptcy protection such that the automatic stay would preclude action by this Court.

[3] These proceedings were subsequently reassigned to United States Magistrate Judge Barbara A. McAuliffe (Doc. 37), and United States District Judge Lawrence J. O'Neill (Doc. 48).

(Mitchell Decl., ¶ 8, Attach. 2, Doc. 44.)  On June 28, 2011, David Ingber, Esq., as an agent of Mr. Elias' law firm, accepted service of process on behalf of Glieberman.  (Mitchell Decl., ¶ 9.)  On July 14, 2011, Plaintiff filed a Proof of Service of Summons with this Court.  (Doc. 30.)

On August 12, 2011, Plaintiff requested a Clerk's entry of default against Glieberman, which was granted on August 16, 2011.  (Doc. 31, 33.)  Plaintiff filed this motion for default judgment on October 27, 2011.[4]  On December 12, 2011, the Court issued a minute order requesting additional briefing on the issue of usury interest and on Plaintiff's privity with the original lender.[5]  (Doc. 49.)  Plaintiff submitted this additional briefing on January 20, 2012.  (Doc. 50-52.)

### III.   DISCUSSION

**A.   Adequacy of Service of Process**

As a general rule, and of particular importance considering the procedural history of this case, the Court considers the adequacy of service of process before evaluating the merits of Plaintiff's Motion for Default Judgment.  *See Katzakian v. Check Resolution Service, Inc.,* No. 10-cv-00716-AWI-GSA, 2010 WL 5200912, *2 (E.D. Cal. Dec. 15, 2010).  Under Fed. R. Civ. P 4(e), an individual such as Glieberman may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally; or
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

---

[4] The motion for default judgment was served on Glieberman's counsel.  (Doc. 46.)

[5] The Original and Amended Loans were extended by IMH Secured Loan Fund, LLC ("IMH Secured").  (Darak Decl., ¶ 3, Doc. 43.)  IMH Secured subsequently assigned its rights and interests to the subject Loans to IMH Special Asset NT 157, LLC ("IMH Special Asset").  (Darak Decl., ¶ 3, Doc. 43.)  IMH Special Asset subsequently changed its name to BR North 223, LLC.  (Darak Decl., ¶ 3, Doc. 43.)  The current assignee and loan holder, BR North 223, LLC, filed this action.

Fed. R. Civ. P. 4(e).

In this case, Plaintiff effectuated service pursuant to Rule 4(e)(2)(C). Plaintiff filed a proof of service stating that David Inger, Esq., an attorney with Ellias & Elias, P.C., was served with the summons and complaint on Glieberman's behalf. (Doc. 30.) Bernard Glieberman expressly authorized Ellias and Elias to accept service on Glieberman's behalf.[6] (Mitchell Decl., ¶ 8, Attach. 2, Doc. 44.) Service was accomplished by serving attorney David Inger, an attorney with Ellias & Elias. P.C.[7] The evidence satisfies the Court that the law firm of Ellias and Elias, and the agents thereof, were authorized to accept service of process on Glieberman's behalf. Accordingly, service was proper pursuant to Rule 4(e)(2)(C).

**B.      Legal Standard on Motions for Default Judgment**

Whether to grant or deny default judgment is within the discretion of the court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court considers the following factors: (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits when reasonably possible. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. *See Panning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978).

---

[6] A document signed by Bernard Glieberman, dated June 14, 2011, states: "I, Bernard Glieberman, both personally and as trustee of the Bernard Glieberman Living Trust dated June 8, 2001, hereby expressly authorize Frederick D. Elias, Esq., or an agent of his law firm, Ellias & Elias, P.C., may accept service on my behalf with respect to a lawsuit filed by BR north 223, LLC in the Eastern District of California (1: 10-cv-02153-OWW-DLB).

[7] The proof of service states that, on June 28, 2011, David Inger, esq., Ellias & Elias, P.C. was served at 33493 Fourteen Mile Road, Suite 80, Farmington Hills, MI 48331 a copy of the summons, verified complaint and scheduling conference order. (Doc. 30.)

1  While factual allegations concerning liability are deemed admitted upon a defendant's default, the
2  court does not presume that any factual allegations relating to the amount of damages suffered are
3  true.  *See Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.,* 826 F.2d at 917-18.  The court must ensure
4  that the amount of damages awarded is reasonable and demonstrated by the evidence.  Fed. R. Civ.
5  P. 55(b)(2)(C)*; Geddes*, 559 F.2d at 560*; TeleVideo Sys., Inc.,* 826 F.2d at 917-18.

**1.     The Possibility of Prejudice to Plaintiff if Relief is Denied**

The first *Eitel* factor "considers whether plaintiff would suffer prejudice if default judgment is not entered[,]" and whether such potential prejudice militates in favor of granting a default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F.Supp. 2d 1172 (C.D. Cal. 2002).  If a refusal to enter a default judgment would leave a plaintiff "without other recourse for recovery," the plaintiff will likely suffer prejudice. *Philip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Here, Plaintiff would likely suffer prejudice if the Court did not enter a default judgment. Glieberman has not responded to the complaint and has not performed on the loan obligations. Absent entry of a default judgment, Plaintiff would be without other recourse for recovery. These circumstances militate in favor of granting a default judgment.

**2.     The Substantive Merits of Plaintiff's Claims and the Sufficiency of the Claims Raised in the Complaint**

The Court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. *See Joe Hand Promotions, Inc. v. Mannor,* No. 11-cv-01426-WBS-KJN, 2012 WL 113792 *3 (E.D. Cal., Jan. 13, 2012).  The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978).  Thus, in order to weigh these two factors the Court must turn to Plaintiff's Complaint.

Plaintiff alleges a claim for breach of a guaranty contract.  (Doc. 1.)  The elements of a claim for breach of contract are (1) the existence of a contract, (2) plaintiff's performance thereof or an excuse for nonperformance, (3) defendant's breach, and (4) damages resulting therefrom. *Reichert v. General Ins. Co. Of America,* 68 Cal. 2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Construction Co.,*

14 Cal. App. 3d 887, 913 (1971).  Similarly, in California the breach of a written guaranty is a contractual cause of action that requires proof of the same elements as breach of contract.  *Bank of Sierra v. Kallis*, No. 05-cv-1574-AWI-SMS, 2006 WL 3513568, at *7 (E.D. Cal.  Dec. 6, 2006); *Acoustics, Inc. v. Trepte Constr. Co.,* 14 Cal. App. 3d 887, 913, 92 Cal. Rptr. 723 (1992).

In its Complaint, Plaintiff avers each of the elements required for a breach of the guaranty contract.  Plaintiff alleges the existence of an Original and Amended Guaranty (Pl.'s Compl., ¶ 4, Doc. 1) and attached copies of those documents to Plaintiff's Motion for Default Judgment. (Darak Decl., Attach. 5, 9, Doc. 43.)  Plaintiff alleges Glieberman signed and delivered each of the loan guaranties.  (Pl.'s Compl., ¶¶ 13,14, Doc. 1.)  Plaintiff alleges it performed the obligations connected to the Original and Amended Guaranties, as specified in the Original and Amended Loan documents, when it loaned Crosswinds the money. (Pl.'s Compl., ¶ 13, 14, Doc. 1.)  Lastly, Plaintiff's Complaint alleges both default and damages (Pl.'s Compl., ¶ 17-18, Doc. 1) and provides evidentiary support for these claims in its Motion for Default Judgment. (Darak Decl., ¶¶ 18, 23, 24, 26, 30-32, Attach. 11, 12, 13, Doc. 43).  Plaintiff alleges Glieberman has not repaid the loan and that Plaintiff has been damaged as a result.  (Pl.'s Compl., ¶¶ 17, 18, Doc. 1.)   Accordingly, the factual allegations and substantive merits of Plaintiff's claims are well-taken.   This factor supports entry of default.

### 3.     The Sum of Money at Stake

The Court must consider "the amount of money at stake in relation to the seriousness of defendant's conduct." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. 00-cv-0395 VRW, 2000 U.S. Dist. LEXIS 19065, *5 (N.D. Cal., Dec. 29, 2000).  The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable. *See Walters v. Shaw/Guehnemann Corp*., No. 03-cv-04058-WHA, 2004 U.S. Dist. LEXIS 11992 at *3-4 (N.D. Cal., Sept. 04, 2007.)  In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment. *See Eitel*, 782 F.2d at 1472; *Totten v. Hurrell,* No. 00-cv-2718, 2001 U.S. Dist. LEXIS 20259, *2 (N.D. Cal. Nov. 28, 2001) (stating that "the 'sum of money at stake' factor [under Eitel ] is meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake").

However, if the requested amounts have evidentiary support, are specifically tailored to the misconduct of the defendant, and are otherwise proportionate to the defendant's offenses, default should not be refused merely because the amount sought is substantial. *Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical*, *Inc.,* No. 10-cv-2212-EMC, 2011 WL 2600898 at *2 (N.D. Cal., June 30, 2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys fees were appropriate as they were supported by adequate evidence provided by Plaintiffs); *Stellmacher v. Guerrero,* No. 10-cv-1357-JAM-KJM, 2010 WL 2889771 (E.D. Cal., July 21, 2010) (Granting a motion for default judgment requesting damages of $467,610,138.00 where the "amount sought is supported by the affidavits . . . and is properly calculated. . . ."); *Facebook, Inc. v. Wallace,* No. 09-cv-798 JF-RS, 2009 WL 3617789 (N.D. Cal., Oct. 29, 2009) (Granting a motion for default judgment requesting damages of $711,237,650.00, which was "proportionate to [Defendant's] offenses"); *Facebook, Inc. v. Fisher,* No. 09-cv-05842-JF-PSG, 2011 WL 250395 (N.D. Cal., Jan. 26, 2010) (Awarding damages upon default in the amount of $360,500,000.00, which was viewed as "proportionate to the gravity of Defendants' acts.")

Plaintiff seeks monetary damages for breach of contract in the amount of $81,170,331.74. In support of this request, Plaintiff has submitted the declaration of Steven T. Darak, Plaintiff's Chief Financial Officer. Attached to the Darak Declaration are authenticated copies of the Original Loan, the Amended Loan, as well as the Amended Guaranty. The Darak Declaration also attached historical accounting spreadsheets regarding the subject loan which detail the accrued principal, interest, late fees and costs. (Darak Decl., Attach. 11, 12, 13, Doc. 43.)

### i.    Outstanding Principal Damages

Plaintiff represents evidence that at the time of Glieberman's default, the outstanding principal balance on the Amended Loan was $39,291,542.28. (Pl.'s Compl., ¶ 18, Doc. 1; Darak Decl., ¶¶ 23, Attach. 11, 12, Doc. 43.) This amount is broken down as follows:

- Initial funding of $22,955,944.80;
- Modification funding of $2,783,835.56. This amount is comprised of $2,699,573.00 in fees to BR North, $7,000.00 in appraisal fees, $360.00 in search fees, $25,000.00 in attorney fees, $26,902.56 in title fees and $25,000 in referral fees;

- Interest reserve payments of $8,650,688.00. The loan documents created an Interest Reserve Account to pay monthly interest payments due until the reserve was depleted. The account was established by $1,650,688.00 in initial funding, $5,500,000.00 in loan modification funding in May of 2007 and $1,500,000.00 in additional loan modification funding in June of 2008;

- Construction and entitlement costs in the amount of $4,848,246.25 and protective advances of $52,777.67. BR North incurred various costs in preparation of development, including land engineering, traffic engineering, architects, land planning, dry utility services, permits, design services, environmental consulting, geotechnical consulting, property taxes, property grading, weed abatement and legal fees.

(Pl.'s Compl., ¶ 18, Doc. 1; Darak Decl., ¶¶ 23, Attach. 11, 12, Doc. 43.)

### ii. Contract Interest Damages

Plaintiff represents that at the time of Glieberman's default, the outstanding amount of unpaid contract-rate interest on the Amended Loan was $13,101,449.72. (Darak Decl., ¶ 25, Attach. 11, Doc. 43.) This figure represents the total amount of contract rate interest ($21,755,556.72) less the amounts received from Crosswinds ($372,170.93) and the interest payments made from the Interest Reserve Account ($8,281,936.07). (Darak Decl., ¶ 25, Attach. 11, Doc. 43.)

### iii. Default Interest Damages

Under the terms of the Amended Loan, in the event of Crosswind's default, a default interest rate of 24% per annum would apply.[8] (Darak Decl., ¶ 26, Attach. 13, Doc. 43.) Crosswinds

---

[8] On December 12, 2011, the Court issued a minute order requesting additional briefing as to why this default rate of interest was not usurious. (Doc. 49.) Plaintiff's supplemental briefing argued that the Original and Amended Loans are exempt from usury interest rate limitations under California law pursuant to Cal. Civ. Code Section 1916.1, which provides that "[t]he restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property.") Plaintiff's supplemental briefing submits evidence that the Original and Amended Loan were solicited, negotiated and arranged by two California-licensed real estate brokers: Douglas Esteves (the Original Loan) and Investors Mortgage Holdings California, Inc. (The Amended Loan) (Pl.'s Supp. Briefing, 2: 8-10; Supplemental Declaration of Steven Darak ("Darak Sup. Decl.") ¶ 5, Doc. 51-52.) Both the Original and Amended Loans identify Mr. Esteves and Investors Mortgage Holdings California, respectively, as a licensed California real estate broker. (Supp. Darak Decl., ¶¶ 6, 10, Doc. 51.) The Original and Amended Loan Agreements also expressly refer

defaulted on the Amended Loan in November of 2008, at which point a default interest rate of 24% per annum applied against the principal balance, which continued to accrue to the date of Plaintiff's Motion.[9]  Accordingly, the amount of unpaid interest at the default rate was $25,726,351.42[10] as of the date Plaintiff's motion for default judgment was filed.  (Darak Decl., ¶ 26, Attach. 13, Doc. 43.)

### iv. Late Charge and Internal Enforcement Damages

Plaintiff additionally claims entitlement to late charges pursuant to the Amended Loan, which provides that if Crosswinds failed to make a payment of principal or interest on the due date, a daily late charge equal to $2,000.00 per day for each day the payment is past due would be assessed. (Darak Decl., ¶ 30, Attach. 13, Doc. 43.)  Additionally, the Amended Note provides that, if any amount were to remain unpaid after the maturity of the Amended Loan, Crosswinds and/or Glieberman would be required to pay late charges equal to .5% of the outstanding principal balance each month until the final payment is received.  (Darak Decl., ¶ 30, Attach. 13, Doc. 43.)  Here, Plaintiff requests total late charge damages in the amount of $9,000,035.65.  (Darak Decl., ¶¶ 30-31, Attach. 13, Doc. 43.)  This figure represents $2,124,000.00 in daily late fees (calculated at $2,000.00 per day) and $6,876,035.65 in monthly late fees (calculated at .5% of the outstanding principal balance each month since the Loan's maturity date).  (Darak Decl., ¶¶ 30-31, Attach. 13, Doc. 43.)

Plaintiff also claims damages relating to the non-judicial foreclosure of the subject property. (Darak Decl., ¶¶ 30-31, Attach. 13, Doc. 43.)  Specifically, Plaintiff claims $1,810.62 in enforcement fees, and $49,052.05 in legal fees.  (Darak Decl., ¶ 32, Attach. 13, Doc. 43.)

---

to the origination and processing fees payable to Mr. Esteves and Investors Mortgage Holdings California with respect to their brokerage services. ("Supp. Darak Decl., ¶¶ 7, 11, Doc. 51.) Plaintiff additionally argues that the Original and Amended Loan were secured by real property, as evidenced by the deed of trust, assignment of rents, security agreement and fixture filing dated November 7, 2006 (Darak Supp. Dec. ¶ 12, Doc. 52; Darak Decl ¶¶ 11, 12, 16, Attach. 3, 4, 8, Doc. 43.)  The Court is persuaded that Plaintiff's default interest rate is not usurious under California law.

[9] Arguably, default interest damages would continue to accrue until judgment is entered.  However, Plaintiff's Motion for Default Judgment does not request accrued default interest damages for the time between the filing of the motion for default judgment and Court's order entering default judgment.

[10] The total default interest damage calculation was reduced by Plaintiff's $2,700,000.00 credit bid at a non-judicial foreclosure sale of the subject property held on March 3, 2011.  (Darak Decl., ¶¶ 28-29, Attach. 11, Doc. 43.)

In sum, as of October 21, 2011, Plaintiff claims a total amount due and owing to Plaintiff under the Amended Loan of $81,170,331.74. (Darak Decl., ¶ 32, Doc. 43) Based on the evidence presented, the court concludes that the damages sought are consistent with the terms of the agreements, supported by sufficient evidence and are otherwise appropriate in light of Crosswinds' default and Glieberman's guaranty of the Loans. This factor therefore weighs in favor of entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *Pepsico*, 238 F.Supp.2d at 1177; *see also Eitel*, 782 F.2d at 1471-72. There is no evidence indicating any facts are in dispute. The Loans and Guaranty were executed by Glieberman, but were not repaid. Moreover, Glieberman has failed to appear in this action or to contest the material facts alleged in Plaintiff's Complaint. *See Pepsico*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages," citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987)). Plaintiff has supported its claims with evidence of the Loans, the Guaranties as well as Glieberman's non-payment. As Glieberman has made no attempt to challenge the accuracy of the allegations in the Complaint, no factual disputes exist that preclude the entry of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers whether Glieberman's default may have been the product of excusable neglect. *See Pepsico*, 238 F. Supp. at 1177; *see also Eitel*, 782 F.2d at 1471-72. Here, Plaintiff has twice put Glieberman on notice regarding the instant lawsuit by serving Glieberman's counsel. Plaintiff's most recent service demonstrates that Glieberman, through counsel, was aware of this lawsuit. (Mitchell Decl., ¶¶ 6-9, Attach. 1- 2, Doc. 44.) Indeed, even after a responsive pleading was overdue, Plaintiff provided Glieberman additional notice via email that Plaintiff would seek a default judgment if Glieberman did not respond to Plaintiff's Complaint. (Mitchell Decl., ¶ 12, Attach. 4, Doc. 44.)

The evidence before the Court indicates Glieberman was aware of these proceedings, and made a conscious decision in refusing to respond to Plaintiff's Complaint or otherwise participate in

12

this case. There is little chance that Glieberman's default was the result of excusable neglect. Accordingly, this factor favors default.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. The fact that Rule 55(b) has been enacted, however, indicates that "this preference, standing alone, is not dispositive.*" Pepsico*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314 at *3 (N.D. Cal. 1996)). Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend. *See Pepsico*, 238 F.Supp.2d at 1177 ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible"). Since Glieberman failed to respond to plaintiff's claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it.

Based on the evaluation of the above-referenced factors, an entry of default judgment is appropriate.

### 7. Attorney's Fees and Costs

Plaintiff additionally requests an award of attorney's fees.[11] (Pl.'s Mot., 11: 6-20, Doc. 42.) California Civil Code § 1717 states that attorney's fees, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party." California Code of Civil Procedure § 1021 "recognizes that attorney fees incurred in prosecuting or defending an action may be recovered as costs ... when they are otherwise authorized by statute or by the parties' agreement." *Santisas v. Goodin*, 17 Cal.4th 599, 71 Cal. Rptr. 2d 830 (1998).

Plaintiff makes this request pursuant to a provision in the Amended Guaranty which provides for recovery of attorney fees:

> If any lawsuit, reference or arbitration is commenced which arises out of, or which relates to this Guaranty, or the other Loan Documents, the prevailing party shall be entitled to recover from each other party such sums as the court . . . may adjudge to be

---

[11] Plaintiff has not provided a specific monetary request for attorney's fees. Rather, Plaintiff has represented that, should the Court find an award of attorney's fees to be proper, Plaintiff will submit an appropriate fee petition for attorney's fees and costs. (Pl.'s Mot., 11: 14-17, Doc. 42.)

13

> reasonable attorney's fees (including the allocated costs for service of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by law.

(Darak Decl., ¶ 17, Attach. 9, ¶ 15(j), Doc. 43.)

The parties' agreements provide for the recovery of attorneys' fees to the prevailing party. Attorneys' fees are authorized Cal. Civ. Code § 1717 when the parties' agreement authorizes attorneys' fees. By successfully obtaining a default judgment against Glieberman in this breach of contract action, Plaintiff is the "prevailing party" under Cal. Civ. Code § 1717 and is entitled to reasonable attorney's fees and costs. An award of reasonable attorney's fees and costs is also authorized under Cal. Code. Civ. P. § 1021.

## CONCLUSION AND RECOMMENDATIONS

For the above reasons, the Court RECOMMENDS as follows:

1. Plaintiff's Motion for Default Judgment be GRANTED;
2. Judgment be entered in favor of the Plaintiff in the amount of **$81,170,331.74** against Defendants Bernard Glieberman, individually and as trustee of the Bernard Glieberman Revocable Living Trust**;**
3. Post-judgment interest as set forth in 28 U.S.C. § 1961(c) shall accrue from the time of entry of judgment until the judgment is satisfied in full;
4. Plaintiff is entitled to an award of attorney fees. Plaintiff shall submit a detailed, itemized petition for attorney's fees and costs within 30 days of the date of this Order.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

1 | The parties are advised that failure to file objections within the specified time may waive the right to
2 | appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 |     IT IS SO ORDERED.
4 |  **Dated:   February 24, 2012**              /s/ **Barbara A. McAuliffe**
                                                  UNITED STATES MAGISTRATE JUDGE